Good morning, Your Honors. May it please the Court, my name is Rahwa Jorjani, appearing on behalf of the petitioner, Marion Scholz, a lawful permanent resident since 1967, who's here in court today. Why didn't she become a citizen? I'm sorry? Why didn't she become a citizen? I'm just amazed at some of these records where she's here since she's three years old. Yes, Your Honor. Three years later, she finds herself in difficulty because she never became a citizen. And I can't answer that question. I just know that representing people for many, many years now, there's financial issues, there's lack of information in the community. But I agree. I wish she had become a citizen. There are – I'd like to reserve two minutes for rebuttal. Your Honors, there are two issues before this Court. The main issue is whether the document relied on by the government here is reviewable under the modified categorical approach. If it is, the second issue becomes whether such a document unequivocally establishes that Ms. Scholz was actually convicted of possession of methamphetamine. Now, Snellenberger laid out a five-part test to determine, and I won't go into every part of the test, but to determine whether a document not listed in Shepard nevertheless meets Shepard's requirements of establishing with certainty the facts to which the defendant assented. We argue here that the BIA failed to substantively apply this five-part test. Your Honors, the fundamental problem here is that despite having the burden to do so, the government has not been able to unequivocally establish what exactly these documents are, where they come from, what statute authorizes them, what are they called, what role do they have in the proceeding, are they placed in the file, and so on and so forth. Well, it's an entry in a – is this an entry in a docket sheet? I'm sorry? It's an entry on a docket sheet, isn't it? Your Honor, that's how we've described it. I went through the record and it's been called many things over the course of this case. The government first called it a printout of the minutes. They called it then another printout of the minutes. Well, I've been called lots of things. That doesn't change who I am. I mean, there can be lots of names attached to things. Is there any real doubt as to what it is, not what it's described as, but what it constitutes? Well, Your Honor, we've described it, as Your Honor said, we've described it as a docket entry. We've pointed to the only statute that Petitioner has been able to find that actually uses the word docket, and that's California Penal Code 1428. Now, California Penal Code 1428 says that docket sheets are – they're optionally created. They're not mandated. And where they are optionally created, that statute points us to another statute in the government code that reveals that clerical entries are entered into a computer system that can be accessed by authorized agents of any district attorney or other prosecuting agency. So the government, who has the burden of establishing deportability, especially when it relies on a document not listed in Shepard, when it's going to go out of sort of the realm of what's already been decided as reliable, a plea colloquy. This was not an old case. I assume that a plea agreement was available, the plea colloquy, the transcript. When the government goes outside of that, it has to do more to tell the court why these documents are reliable. And those questions have been asked since 2008 in the proceedings. DHS did not submit a single argument as to what they were. So the government – Kennedy. Pardon me. Section 1428 reads specifically that the clerk may keep a docket sheet in lieu of a minute order in misdemeanor and infraction cases of misdemeanor, and that an entry in the docket shall, as mandatory, be deemed a sufficient entry in the minutes or register of action for all purposes. Why doesn't that make it a document of conviction within Schnellenberger? Right. Well, Your Honor, the main – I think the biggest part of – the biggest problem with this case, the part of Schnellenberger that I think has really been failed here is that Schnellenberger and then later Cabin-Tac requires – Cabin-Tac was in 2012 – require that there be some proof that the document is actually placed in the file. Under Schnellenberger, whether we like it or not, under Schnellenberger, the Court did find that a defense attorney, even after a case is done, even if they don't get a copy of the minute order, has to go back and check the file to make sure that everything that's placed in the file accurately reflects the proceedings. But if these docket entries aren't actually – if they don't make it into the file, then I think it would be unreasonable to expect the defense attorney to review them and check them for accuracy. Is there any indication at all that a docket entry is not a public record in California? Your Honor, it's – No. I don't know. Yeah, well, that would be necessary because if it were a public document, which it is, from my experience at 850 Bryant Street, then it's open for your checking. So what's your next argument? Well, Your Honor, and I don't mean to testify inappropriately, but in my experience, I've actually never seen a docket sheet like this. I've only dealt with one Inyo County conviction, and that's this one. So it really does depend on the county that you're in. And if the clerks are entering these documents but not printing them out, then we would be putting a burden on the defense attorney to go up to a clerk and just say, hey, you know, give me what you got. Whatever you have in there that you think that has recorded some part of my proceedings, can you print it out and give it to me? I don't know that the court would be able to handle that burden. No, no. I don't have experience on Bryant Street, but I do on Cadman Plaza east of Brooklyn. And first, initially, you would just ask for the docket sheet for a particular year, the file, and you would open it and you would find the docket sheet. And now you would simply – it would be recorded. The docket sheet is part of – we're now digitized, so you would just pull up the docket sheet from a computer. And we rely on it all the time for various reasons, to find documents in the case, to see what happened on a particular day. There's a summary that's prepared by a case manager or a court officer down in the clerk's office. I don't know why that isn't fairly reliable. I mean, any document could be mistaken and an error could be made in the creation of it. But this is a document that everybody relies on, including, by the way, the Court of Appeals when the case gets up there. We would just respectfully assert that the government hasn't proven here, as it should do, that everyone relies on a docket sheet in Neal County. That, again, if – Snellenberger didn't say that the defendant – you know, Snellenberger didn't stop at just saying it can't be a secret document. Snellenberger really required that the document be placed in the file. And more importantly, in 2012, again, reaffirming and reinterpreting Snellenberger, Cabin Tack, this Court held in Cabin Tack, that it really matters that the documents get placed in the file. If I can just point out one more difference between docket sheets and, say, minute orders, abstracts, plea agreements, and plea transcripts, docket entries change. So what a docket sheet looks like or a docket entry, whatever this is, is going to differ based on the day that it was printed. It's not a document that sort of, you know, is something one day in it. It's that same document five months later. So docket entries – I don't understand. What do you mean by that? I mean, obviously, additional entries could be made. Additional entries – Are old entries somehow tampered with? Right. But a minute order, once it's created, established, it ends there. It is what it is. That minute order captures the information. You don't go back and change a minute order. You may take a new action, and a new minute order will be created for that. But the other difference is that minute orders, plea agreements, and abstracts are all forms. They really clarify what information is being sought from the forms themselves, whereas we don't know to what degree of specificity a court clerk has to actually enter information on a docket sheet. We don't know – you know, one clerk may be very specific, another clerk may just have the basics of, you know, the action and what happened and so on and so forth. So there are lots of things that we don't know. And even Strickland actually talked about when Strickland found that Maryland docket sheets were admissible, it really did rely on Maryland case law, Maryland statutes. And that analysis has not happened here. Your Honors, I realize that I have a minute and 46 seconds left, but I'd be happy to answer more questions. Thank you. We'll see you for rebuttal. May it please the Court. Edward Wiggers again for Respondent. Welcome back. Thank you, Your Honor. Under California law, docket entries can serve in lieu of minutes for misdemeanor cases in superior courts, such as Petitioner's case. The law requires the court clerk to prepare the minutes or the docket entries in lieu of them within a reasonable time after the rendering of a judgment, which is usually the same day. The courts also have the inherent power to correct clerical errors in their minutes or the substituted docket entries. And the conviction documents in Petitioner's case, therefore, meet the Strickland test for judicial noticeability, and the court should deny the petition for review. Regarding Petitioner's contention that the absence of the placing of the docket sheet in the paper file is being significant, Strickland actually did not require an entry in the file, for it noted that the docket, in that case, the document could be, the clerk was required to keep records in books or other permanent form. The docket entry could be on a sheet in the case file, on the file jacket itself, or in a separate docket book, which is necessarily not part of the file. And as far as unequivocally establishing removability, the docket sheet in this case establishes that Petitioner pled no contest to count one of the indictment. Count one of the indictment established, charged her with possession of methamphetamine. That is about as concise and clear as it can get, that this is a controlled substances offense that qualifies as a ground of removability. Does she have a chance of avoiding deportation as a practical matter? As a legal matter, I mean, is this automatic as a result of this misdemeanor conviction when she's been in the country for 33 years and you're sort of going to drop her into a country that she's not familiar with? The only discretionary relief that would be available, Your Honor, would be cancellation of removal, but I believe this is a disqualifying offense. So I believe no at this point. So there's no room for the Attorney General to exercise any mercy? Congress has circumscribed the current Attorney General's discretion on this point, Your Honor. It used to be looser prior to 1996, but now it's the discretionary form of relief that would be available would be cancellation. There is the possibility of DHS exercising prosecutorial discretion in an abstract sense, however, that is not a matter that is separate from the proceedings we have here. And with a criminal conviction, especially in this situation where it's not the first criminal conviction, Petitioner has already received a grant of cancellation once prior to the conviction that now has her back in proceedings. So she's already been given a measure of grace and reoffended. So the likelihood of any second measure of grace is slim, I believe. I didn't see it. Does the record that you know reflect what was behind the first cancellation of removal, or I guess the first effort to remove her? Is there a prior criminal conviction? It was a criminal conviction, Your Honor, I believe also for drugs. Unfortunately, I believe someone highlighted in the official record, and it's hard to discern exactly what the basis was for the cancellation grant based on the copies I've seen. However, that is my understanding from the record. Do we have? There is a potential question, again, raised in the context of another case before our Court. As I understand it, the record here, the docket sheet, I'll call it, I looked. I did not find anything in there that identified what the substance, the unlawful substance was. It's my understanding that to determine that it was meth, you've got to make the connection between the docket sheet and the complaint. Is that your understanding of the state of the record? Yes, Your Honor, and that there is that connection by reference to count one of the complaint in the docket. At least theoretically, it's argued that a defendant could plead no contest to a charge without acceding to the specific factual allegations, that is, what the substance was. And as our case law has established, California's list of substances is different from the Federal list, and so it becomes important for our purposes in this case to make sure that the substance in question is one that appears on the Federal list, which meth obviously does. What do you say to the argument that the no contest plea does not necessarily constitute a factual admission or admission to the fact that the substance was a substance on the Federal list? I would submit, Your Honor, that if it were that scenario where Petitioners plead no contest, but to a nonspecific substance, just under the statute, then the docket sheet would not reflect a no contest plea to count one of the indictment because count one does allege methamphetamine. It would reflect something along the lines, please no contest to a charge of possession of a controlled substance without further elaboration. Mr. Wiggers, in California, a no contest plea to a felony is an admission of guilt. Yes, Your Honor. But is that also true of a misdemeanor? I haven't explored that question thoroughly, Your Honor. I suspect that it is. It certainly is for immigration purposes. Do you have a case that says so? I'd have to look, Your Honor, but I believe under the definition of a conviction in the Immigration and Nationality Act, in Section 1101, it includes a no contest plea or anything that results in a judgment of guilt. Even if under California law, a no contest plea, for instance, a no contest plea in a drunk driving misdemeanor case cannot be used as an admission in a subsequent civil suit because it's not considered to be an admission of guilt. Isn't the same true of a no contest to a misdemeanor drug case? Your Honor, in this case, the question is essentially whether a Petitioner was convicted of an offense. A no contest plea resulted in a finding of guilty. So under the INA, it is a conviction for what was specified in the complaint based on the reference in the docket sheet. And I would also note that the California statutory provisions applicable to these to ensure their accuracy throughout the duration of the time they need to be maintained. I would also note that a court that the request DHS submitted to the Inyo County Superior Court was for minute orders and plea agreements and a third document that is one of the judicially noticeable documents. In response, the court provided the docket sheet. That indicates that this docket sheet is what the court in Inyo County is preparing in lieu of minute orders and establishes that it is a valid conviction document for immigration purposes or a valid conviction document in general. Subject to any further questions from the Court? Thank you. Thank you, Your Honor. Your Honors, briefly, I'd like to make one correction. It's our understanding, and one of the main points of this case, that DHS never asked for a plea agreement or a plea transcript. The two places where they asked, they had two opportunities to ask for Shepard reliable documents. One is at, I believe, AR-137. The other is at AR-188. And at no point did they ask for those particular documents. I'd also like to distinguish Strickland in one other way. Your Honors, Strickland was a criminal sentencing case. So the government in Strickland was operating under several procedural protections not at play in removal proceedings. The government in Strickland was subject to the federal rules of evidence, including the best evidence rule. They were subject to formal discovery obligations, such as having to turn over exculpatory materials to the other side or to the court. Those protections were not at play here. So when the court in Strickland found, just based on a Maryland docket sheet, that that was enough, it sort of did so assured that if the government had other documents, that it would have to come forth and present them. And that same protection doesn't exist under immigration law. And actually, that point was made by the Supreme Court in Moncrief. I also wanted to direct Your Honors' attention to the fact that the complaint numbers don't match. The number on the complaint doesn't match the number, the case number in the docket entries. One has "-002 added to it. So it's ambiguity such as these, where even if the court were able to find that they can review these docket summaries or docket sheets, it's not clear that the complaint that the court was looking at, if we even take what it said to be accurate, was the same complaint that the petitioner actually pled no contest to. California case law actually rejected the same position that the government is pushing here, which is that in People v. Willard, the court held or rejected the government's position that a no contest plea to count one in the information actually incorporated by reference the complaint as the factual basis for the plea. And it's really that factual basis that controls for this case, because this case is controlled by Shepard. What's the difference between an abstract judgment and an entry on a docket sheet? That's a good question, Your Honor. And I don't know that I have enough information to answer that. I know that abstracts of judgments are governed by California Penal Code 1213, and that they're prison commitment orders. The abstract is required. It plays a very serious role in a California criminal proceeding in that it is the document that is submitted to the prison to tell the prison how long you're going away for and what you're going away for. So it's very specifically governed by 1213. And the minute orders are very specifically governed by 1207. And then we have this California Penal Code 1428 that just says, hey, you can do a docket in lieu of the minutes. And that statute, actually, we can connect the dots from 1428 to 69844.5 of the government code, which then tells us, hey, clerks can enter things into the computer and the defense attorney doesn't necessarily have access to the notes. One of our worries is that if the defendant's attorney had objected to the court's characterization of the plea, where the court, where it says in the docket entries you have, you know, you're found guilty as charged in count one, if the defense attorney had actually made an objection and said, Your Honor, we didn't agree to that, Ms. Schultz doesn't want to, is not agreeing to a plea other than to control substance, my worry is, would that be caught in a docket entry? Do we have any statute that governs the degree of specificity with which docket entries must be made? That question would be answered by a transcript, for sure. Would it be captured by an abstract judgment? Well, an objection wouldn't, Your Honor. And we don't have an abstract of judgment here. We only have these docket entries, basically the clerk's notes, and we have the complaint. And, Your Honor, the statute that the government pointed to last minute in its 28J, the 68150, that statute pertains to California trial court records. That's actually defined in the next, it wasn't submitted by the government, but in the next statute over 68151, the statute defines what is a trial court record. And my fair reading, nothing in there in that definition suggested that docket entries would actually be trial court records that are just readily available to the public. Anyone can get them. Thank you, Your Honor. We thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Korman, Clifton, Bea